**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**MANHATTAN COURTHOUSE**

| | |
|---|---|
| Monique Labarr and Matthew Rutledge, individually and on behalf of all others similarly situated, | 1:23-cv-01135-VEC |
| Plaintiffs, | |
| - against - | |
| The Epoch Times Association Inc., | |
| Defendant | |

Plaintiffs' Memorandum of Law in Opposition to
Defendant's Motion to Dismiss the Amended Complaint

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION .......................................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................................... 1

LEGAL STANDARDS .................................................................................................................... 2

ARGUMENT .................................................................................................................................. 2

I.      PLAINTIFFS HAVE PLAUSIBLY ALLEGED DECEPTION ......................................... 2

        A.      UCL, FAL and CLRA Claims Not Co-Extensive with Rule 9(b) .......................... 3

        B.      Reasonable to Expect "Introductory Trial" Meant No Additional
                Charges ................................................................................................................... 4

        C.      Defendant cannot Assert Truthfulness as a Defense for Alleged
                Deception ................................................................................................................ 6

        D.      Plaintiffs Provided Sufficient Facts to Support their UCL Claim and
                Reliance ................................................................................................................... 8

        E.      ARL is Pursuant to UCL, FAL and CLR ............................................................... 9

II.     PRICE PREMIUM SUPPORT ARTICLE III STANDING ............................................. 10

        A.      Labarr's Allegations of Price Premium is Sufficiently Pled ............................... 10

        B.      Rutledge Allegations are Based on Price Premium Theory .................................. 11

III.    UNJUST ENRICHMENT CLAIM IS PERMITTED ....................................................... 12

CONCLUSION ............................................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*Arnold v. Hearst Mag. Media, Inc.*,
   No. 19-cv-1969, 2020 WL 3469367 (S.D. Cal. June 25, 2020) ........................................... 3, 9

*Artis v. Random House, Inc.*,
   936 N.Y.S.2d 479 (Sup. Ct. 2011) ..................................................................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 2

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ............................................................................................ 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 2

*Boost Beauty, LLC v. Woo Signatures, LLC*,
   No. 18-cv-02960, 2022 WL 409957 (C.D. Cal. Feb. 7, 2022) ................................................ 7

*Boule v. Hutton*, 328 F.3d 84 (2d Cir. 2003) ............................................................................. 3, 7

*Brady v. Anker Innovations Ltd.*,
   No. 18-cv-11396, 2020 WL 158760 (S.D.N.Y. Jan. 13, 2020) ............................................ 12

*Brownell v. Starbucks Coffee Co.*,
   No. 22-cv-1199, 2023 WL 4489494 (N.D.N.Y. July 12, 2023) ................................................ 4

*Caro Cap., LLC v. Koch*,
   No. 20-cv-6153, 2023 WL 1103668 (S.D.N.Y. Jan. 30, 2023) ............................................ 13

*Carrier Corp. v. Allstate Ins. Co.*,
   133 N.Y.S.3d 697 (2020) ................................................................................................... 12

*Chamberlan v. Ford Motor Co.*,
   369 F. Supp. 2d 1138 (N.D. Cal. 2005) ............................................................................... 3

*Chance v. Armstrong*,
   143 F.3d 698 (2d Cir. 1998) ................................................................................................ 6

*Duran v. Henkel of Am., Inc.*,
   450 F. Supp. 3d 337 (S.D.N.Y. 2020) ........................................................................... 10, 11

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) .............................................................................................. 2

*Erickson v. Pardus*,
   127 S. Ct. 2197 (2007).................................................................................................... 8

*Eshelby v. L'Oreal USA, Inc.*,
   No. 22-cv-1396, 2023 WL 2647958 (S.D.N.Y. Mar. 27, 2023)............................................. 7

*Fishon v. Peloton Interactive, Inc.*,
   620 F. Supp. 3d 80 (S.D.N.Y. 2022)......................................................................... 10, 11

*Garadi v. Mars Wrigley Confectionary US, LLC*,
   No. 21-cv-1996, 2021 WL 2843137 (E.D.N.Y. July 6, 2021)................................................ 6

*Hawkins v. Coca-Cola Co.*,
   No. 21-cv-8788, 2023 WL 1821944 (S.D.N.Y. Feb. 7, 2023) ............................................. 10

*Hesse v. Godiva Chocolatier, Inc.*,
   463 F. Supp. 3d 453 (S.D.N.Y. 2020)............................................................................. 2

*Hishon v. King*,
   467 U.S. 69 (1984)....................................................................................................... 2

*Hodges v. King's Hawaiian Bakery W., Inc.*,
   No. 21-cv-4541, 2021 WL 5178826 (N.D. Cal. Nov. 8, 2021) ............................................. 6

*Housey v. Procter & Gamble Co.*,
   No. 21-cv-2286, 2022 WL 874731 (S.D.N.Y. Mar. 24, 2022)............................................. 3

*In re Actimmune Mktg. Litig.*,
   No. 08-cv-02376, 2009 WL 3740648 (N.D.Cal. Nov. 6, 2009) ............................................ 8

*In re Chrysler-Dodge-Jeep Ecodiesel Marketing*,
   295 F. Supp. 3d 927 (N.D. Cal. 2018) .......................................................................... 10

*In re Initial Pub. Offering Sec. Litig.*,
   241 F. Supp. 2d 281 (S.D.N.Y. 2003)........................................................................... 13

*In re Michel*,
   573 B.R. 46 (Bankr. E.D.N.Y. 2017).............................................................................. 12

*In re NJOY, Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) ........................................................................ 10

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
   No. 16-cv-06391, 2018 WL 1576457 (N.D. Cal. Mar. 30, 2018) ........................................ 13

*In re Tobacco Cases II*,
   192 Cal. Rptr. 3d 881 (2015) ...................................................................................... 10

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ........................................................................................ 8

*In re ZF-TRW Airbag Litig.*,
  601 F. Supp. 3d 625 (C.D. Cal. 2022) ................................................................ 8

*Johnson v. Pluralsight, LLC*,
  728 F. App'x 674 (9th Cir. 2018) ....................................................................... 9

*Kasky v. Nike, Inc.*,
  45 P.3d 243 (Cal. 2002) ................................................................................... 3, 7

*Khoja v. Orexigen Thers. Inc.*,
  899 F.3d 988 (9th Cir. 2018) ........................................................................... 11

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) ....................................................................................... 9

*LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*,
  No. 18-cv-02573, 2019 WL 160335 (N.D. Cal. Jan. 10, 2019) ........................ 9

*Mantikas v. Kellogg Co.*,
  910 F.3d 633 (2d Cir. 2018) ............................................................................... 7

*Marino v. Coach, Inc.*,
  264 F. Supp. 3d 558 (S.D.N.Y. 2017) ................................................................ 3

*Melito v. Am. Eagle Outfitters, Inc.*,
  No. 14-cv-2440, 2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017) ...................... 11

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020) ........................................................................... 3

*Nakamura v. Fujii*,
  677 N.Y.S.2d 113 (1998) ................................................................................. 12

*Nicosia v. Amazon.com, Inc.*,
  384 F. Supp. 3d 254 (E.D.N.Y. 2019) ............................................................... 7

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d. Cir. 2015) ............................................................................. 2

*People ex rel. Spitzer v. Gen. Elec. Co.*,
  756 N.Y.S.2d 520 (1st Dep't 2003) ................................................................... 7

*Reynolds v. Lifewatch, Inc.*,
  136 F. Supp. 3d 503 (S.D.N.Y. 2015) .............................................................. 11

*Rosado v. eBay Inc.*,
    53 F. Supp. 3d 1256 (N.D. Cal. 2014) ........................................................................ 8

*Rutherford Holdings, LLC v. Plaza Del Rey*,
    223 Cal. App. 4th 221 (2014) .................................................................................. 13

*Smith v. Allmax Nutrition, Inc.*,
    No. 15-cv-00744, 2015 WL 9434768 (E.D. Cal. Dec. 24, 2015) .......................................... 13

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)........................................................................................... 10, 11

*Vitiosus v. Alani Nutrition, LLC*,
    No. 21-cv-2048, 2022 WL 2441303 (S.D. Cal. July 5, 2022) .................................................. 6

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) .................................................................................. 7

*Zurakov v. Register.Com, Inc.*,
    760 N.Y.S.2d 13 (2003) ........................................................................................ 11

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................................ 1

Cal. Bus. & Prof. Code § 17500 ............................................................................. 1, 9

Cal. Bus. & Prof. Code § 17600 ................................................................................ 1

Cal. Bus. & Prof. Code § 17602(a)(1) ......................................................................... 9

Cal. Bus. Prof. Code §17204 ................................................................................... 9

Cal. Bus. Prof. Code §17535 ................................................................................... 9

Cal. Civ. Code §§ 1750........................................................................................... 1

**Rules**

Fed. R. Civ. P. 12(b)(6).......................................................................................... 2, 6

Fed. R. Civ. P. 8(a) ............................................................................................. 13

Fed. R. Civ. P. 8(d)(2)............................................................................................ 12

Fed. R. Civ. P. 9(b) .............................................................................................. 3

## INTRODUCTION

Plaintiffs Monique Labarr and Matthew Rutledge[1] ("Plaintiffs," "Labarr," or "Rutledge") submit this Memorandum of Law in Opposition to the Motion by Defendant The Epoch Times Association Inc. ("Defendant") to Dismiss the Amended Complaint ("Am. Compl."). ECF No. 20.

Plaintiffs bring claims for damages for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, California's Consumer Legal Remedies Act ("CLR"), Cal. Civ. Code §§ 1750 *et seq.*, California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code § 17600, *et seq.*, violations of New York's GBL §§ 349 and 350, Am. Compl. ¶¶ 65-98, and common law claims, Am. Compl. ¶¶ 99-103, on behalf of consumers who subscribed to Defendant's "digital version of its news publication," The Epoch Times ("Subscription" or "Service"). Am. Compl. ¶ 1. Plaintiffs seek monetary relief, expenses, and reasonable attorneys' fees. Am. Compl. at 12, Prayer for Relief, ¶¶ 2-4.

Defendant argues that the claims should be dismissed because, among other reasons, the "allegations sum to ambiguous assertions and conclusions lacking factual support." *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss ("Def. Mem.") ECF No. 22 at 8.[2] None of its arguments are a basis for dismissal and its Motion should be denied.

## FACTUAL BACKGROUND

Defendant markets a subscription base service that automatically renewed after a period of time. Am. Compl. ¶¶ 1, 16. In contrast to subscription services that allow consumers to "opt-in" when deciding to continue a service, Defendant's subscription was an "autorenewal" that took

---

[1] Plaintiff Pratik Kandel has voluntarily dismissed, which includes the claims under the Nebraska Consumer Protection Act. ECF No. 18.

[2] In support of its Motion, Defendant submits the Declaration of Tiandai You ("You Decl.") with a copy of Epoch's digital subscription page as exhibit A and a copy of the Terms of Service – Digital Subscription as exhibit B. ECF No. 22, 1-3.

"advantage of consumer inertia," and made it difficult to cancel the subscription. Am. Compl. ¶¶ 19, 25.

Had Plaintiffs known "that the Service was not an actual trial that would end at the conclusion of the introductory period with no additional costs incurred or subscription entered into as represented," they "would not have purchased the Service on the same terms." Am. Compl. ¶ 74.

## LEGAL STANDARDS

To proceed beyond a motion made pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King*, 467 U.S. 69, 73 (1984).

## ARGUMENT

### I.    PLAINTIFFS HAVE PLAUSIBLY ALLEGED DECEPTION

To successfully assert a claim under GBL §§ 349 and 350, Plaintiffs "must allege that [D]efendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d. Cir. 2015).

Claims under the GBL, UCL, FAL, and CLRA are governed by the "reasonable consumer standard." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 466 (S.D.N.Y. 2020); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).

2

The consumer protection laws do not require "literal falsity;" only that a reasonable consumer is "likely to be deceived," which can occur even with a technically true statement. *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002); *Boule v. Hutton*, 328 F.3d 84, 93 (2d Cir. 2003).

While there is "no private right of action under" ARL, a consumer "who has been harmed by a violation of [] [ARL] may bring a claim pursuant to other consumer protection statutes, including California's FAL." *Arnold v. Hearst Mag. Media, Inc.*, No. 19-cv-1969, 2020 WL 3469367, at *7 (S.D. Cal. June 25, 2020).

A.    UCL, FAL and CLRA Claims Not Co-Extensive with Rule 9(b)

While Defendant contends that Plaintiffs' claims under the UCL, FAL, and CLRA, fail because they were "[not] pled with [] particularity," "Rule 9(b) requirements may not even be necessary, given that a defendant can violate the UCL, FAL, and CLRA by acting with mere negligence." Def. Mem. at 15 citing *Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 567 (S.D.N.Y. 2017); *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 n.11 (9th Cir. 2020).

This is because it is not required that "[P]laintiffs must show intent to deceive for CLRA and UCL claims." *Moore*, 966 F.3d at 1019 n.11 citing *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005).

Nevertheless, the allegations satisfied Rule 9(b)'s heightened pleading standard by providing the "who, what, where, when, and how" of the fraud, "the first paragraph of any newspaper story." *Housey v. Procter & Gamble Co.*, No. 21-cv-2286, 2022 WL 874731, at *3 (S.D.N.Y. Mar. 24, 2022).

The "who" was "The Epoch Times Association Inc." Am. Compl. ¶ 54. The "what" was offering an "introductory subscription" for "$1 for two months or $99 for twelve months." Am. Compl. ¶ 68. The "where" and "when" was where "Plaintiffs' payment information was physically received by Defendant" and "within the applicable statutes of limitations." Am. Compl. ¶¶ 50, 56.

The "how" was Defendant's "autorenewal" subscription and its cancellation process that converted its "introductory period/trial" as a continuous enrollment without "consent." Am. Compl. ¶¶ 19, 23, 87, 89.

B.    Reasonable to Expect "Introductory Trial" Meant No Additional Charges

Defendant incorrectly concludes that its "statements about the Introductory Promotion, and its cancellation policy would not lead a reasonable consumer to conclude the Website subscription would cease at the end of the Introductory Promotion." Def. Mem. 20 citing *Brownell v. Starbucks Coffee Co.*, No. 22-cv-1199, 2023 WL 4489494, at *5 (N.D.N.Y. July 12, 2023).

First, Defendant enticed consumers with its "$1 for two months or $99 for twelve months" "introductory period/trial," giving an impression the trial would "conclude without them being charged more." Am. Compl. ¶ 68.

However, the Service was a type of "negative option" or "autorenewal" subscription where a "customer must exercise a 'negative option' to affirmatively opt-out of future transactions." Am. Compl. ¶¶ 6-7, 19.

A report published in 2018, which was based on data from the Federal Trade Commission ("FTC"), noted that "consumers have lost over $1.3 billion in 'free/nominal-fee trial offer' plans over the last ten years," and that "36,986 complaints about free/nominal-fee trials" were received by the Better Business Bureau ("BBB"). Am. Compl. ¶¶ 14-15. This is due, in part, by the fact that "if the customer does not affirmatively cancel, they will be charged a significantly higher amount for the product or service," which is the case at hand. Am. Compl. ¶ 13.

Defendant took "advantage of consumer inertia, as psychological studies have shown autorenewal users are seven times more likely to 'continue' or not cancel their subscriptions, compared to if a subscription service was set to automatically cancel." Am. Compl. ¶ 19. As the Amended Complaint exemplified with studies showing that "consumers tend to procrastinate on

4

mundane tasks, especially where they are deemed boring or difficult, which includes cancelling subscriptions." Am. Compl. ¶ 22.

Second, while "Plaintiffs acknowledge that after the 'introductory' offer ends, subscribers are 'subject to an autorenewal on a monthly or yearly basis,'" the cancellation process was so arduous that it was close to impossible to stop the reoccurring payments. Def. Mem. at 18; Am. Compl. ¶¶ 32-38.

Defendant had a "scientifically designed process to reduce 'churn,' an industry term for customer cancellation rates," a process that has "been developed and tested by experts in behavioral science and psychology and include interrelated manipulative design tactics referred to as 'dark patterns.'" Am. Compl. ¶¶ 23-24. As a result, "Defendant [] scientifically ensur[ed] that no more than a fixed percentage of users [] successfully navigat[ed] the gauntlet of obstacles laid down in front of them if they decide to cancel." Am. Compl. ¶ 25.

For instance, once Plaintiffs became aware that "their subscriptions were being auto-renewed," they attempted to "cancel and prevent any" further charges. Am. Compl. ¶ 26. Plaintiffs were confronted with obstacles that began with a link to "Manage My Subscription," only to be presented with a "video and several promotional offers" to continue the Service. Am. Compl. ¶¶ 27-28.

Then, after tediously watching "the video for more than one minute were Plaintiffs able to click through and decline the promotional offers." Am. Compl. ¶ 29. Unfortunately, Plaintiffs could not cancel the subscription after watching the video, rather they were given an option to call "Defendant's customer service" or use its "LIVE CHAT function" in order to do so. Am. Compl. ¶¶ 29-30.

After such attempts, however, Plaintiffs "could not adequately navigate and complete the cancellation process" because of Defendant's "AI responders" that "[were] designed to be unable to process anything other than the most basic and simple request" nor were they "equipped to adequately respond" to "keywords such as 'cancel' and refund.'" Am. Compl. ¶¶ 31, 33-34.

Further, even when "actual persons over[rode] the AI responders, they [were] intentionally not provided the training and ability to address issues relating to cancellation." Am. Compl. ¶ 37. Thus, establishing that "Defendant's responses [were] intentionally designed to frustrate customers like Plaintiffs for the purpose of prohibiting their ability to cancel their Service and making its 'introductory period/trial' misleading." Am. Compl. ¶¶ 38, 68.

In considering Defendant's Rule 12(b)(6) Motion, "[t]he issue is not whether [] [P]laintiff is likely to prevail ultimately" and show that "a significant portion of the general consuming public or of targeted consumers" share his understanding of Defendant's representations, "but whether [he] is entitled to offer evidence to support the[se] claims." *Hodges v. King's Hawaiian Bakery W., Inc.*, No. 21-cv-4541, 2021 WL 5178826, at *6 (N.D. Cal. Nov. 8, 2021), *Vitiosus v. Alani Nutrition, LLC*, No. 21-cv-2048, 2022 WL 2441303, at *12 (S.D. Cal. July 5, 2022), and *Garadi v. Mars Wrigley Confectionary US, LLC*, No. 21-cv-1996, 2021 WL 2843137, at *2 (E.D.N.Y. July 6, 2021); *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

C.     Defendant cannot Assert Truthfulness as a Defense for Alleged Deception

Defendant argues that the "implausibility of Plaintiffs' 'false representation' allegation [was] reinforced by [its] 'Terms of Service – Digital Subscriptions' ('TOS')," which included "the Cancellation and Refund Policy." Def. Mem. at 10 citing You Decl.

Whether Plaintiffs saw and consented the TOS, or whether they had "reasonable[] [] notice" that they were agreeing to an autorenewal subscription is challenged by Plaintiffs' assertion that they attempted to cancel it only "[u]pon learning that that their subscriptions were being auto-

6

renewed." Thus, as there "is an issue of fact as to the making of the agreement [][], then a trial is necessary." *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 262 (E.D.N.Y. 2019); *Boost Beauty, LLC v. Woo Signatures, LLC*, No. 18-cv-02960, 2022 WL 409957, at *12 (C.D. Cal. Feb. 7, 2022); Am. Compl. ¶ 26.

Further, New York and California law prohibit not only marketing claims that are literally false, but claims that have the capacity "to mislead even reasonable consumers acting reasonably under the circumstances." *Boule*, 328 F.3d at 93 (technically true statements are actionable under New York GBL §§ 349 and 350 if they are misleading); *People ex rel. Spitzer v. Gen. Elec. Co.*, 756 N.Y.S.2d 520, 523 (1st Dep't 2003) (same) *see also Kasky*, 45 P.3d at 250.

Therefore, Defendant cannot defeat Plaintiffs' claims with a defense of technical accuracy. Def. Mem. at 17 n. 4 citing *Eshelby v. L'Oreal USA, Inc.*, No. 22-cv-1396, 2023 WL 2647958, at *4 (S.D.N.Y. Mar. 27, 2023) and *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018).

Here, the fact that the "$1 for two months or $99 for twelve months" statement, although true, does not render it unactionable as a matter of law. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Plaintiffs have plausibly alleged that Defendant's use of an autorenewal feature and its cancelation process resulted in a "Service [that] was not an actual trial" that should have ended "at the conclusion of the introductory period with no additional costs incurred or subscription entered into as represented." Am. Compl. ¶¶ 19, 24, 74.

Further, that Defendant's "policy specifies cancellation can be made 'at any time,'" coupled with its advertisement of "$1 for two months or $99 for twelve months," gave an impression the subscription could be easily cancelled, or, at the very least, not be riddled with hurdles that made the process tedious and difficult to do. Def. Mem. at 20, Am. Compl. ¶¶ 36, 68.

7

D.     Plaintiffs Provided Sufficient Facts to Support their UCL Claim and Reliance

Though Defendant proffers that "Plaintiffs do not state where they saw the []

representations" or if "they relied on them," "[u]nder [the] notice pleading, [P]laintiff[s] need not

plead specific facts, but need only give [D]efendant 'fair notice' of the nature and grounds of

[their] claims." Def. Mem. 21 citing *In re ZF-TRW Airbag Litig.*, 601 F. Supp. 3d 625, 765 (C.D.

Cal. 2022); *Artis v. Random House, Inc.*, 936 N.Y.S.2d 479, 484 (Sup. Ct. 2011); *Erickson v.*

*Pardus*, 127 S. Ct. 2197, 2200 (2007).

Further, Plaintiffs established they relied on its introductory trial offer by alleging they

"signed up to receive digital access to The Epoch Times because it was only $1 for two months or

$99 for twelve months and they wanted to try the Service out." Am. Compl. ¶ 70.

Accordingly, because the Service automatically renewed without Plaintiffs' consent and it

made the cancellation process difficult to complete, the Service "was not an actual trial that would

end at the conclusion of the introductory period with no additional costs incurred or subscription

entered into as represented." Am. Compl. ¶¶ 27, 31, 74, 89. This resulted in a "los[s] [of] money"

by paying a "price premium" based on their "own actual and reasonable reliance" on "Defendant's

misrepresentations." *Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256, 1264-65 (N.D. Cal. 2014) citing

*In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); Am. Compl. ¶ 74.

Had Plaintiffs known "they would not be able to unsubscribe, cancel their subscriptions,

and not be charged further," they "would not have subscribed to the Service or would have paid

less." *Rosado*, 53 F. Supp. 3d at 1265; *see also In re Actimmune Mktg. Litig.*, No. 08-cv-02376,

2009 WL 3740648, at *8 (N.D.Cal. Nov. 6, 2009); Am. Compl. ¶ 57.

Similarly, Defendant contends that the UCL claim fails because Plaintiffs do not "identify

'the particular section of the statute [or regulation] that was violated[.]'" Def. Mem. at 23 citing

8

*LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*, No. 18-cv-02573, 2019 WL 160335, at *13 (N.D. Cal. Jan. 10, 2019).

However, Plaintiffs provided "with reasonable particularity the facts supporting the violation," by alleging that due to Defendant's "untrue and misleading advertising," its "conduct constitute[ed] an unfair business act and practice," satisfying "fair notice" and UCL requirements. *LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*, No. 18-cv-02573, 2019 WL 160335, at *13 (N.D. Cal. Jan. 10, 2019); Am. Compl. ¶ 72 citing Cal. Bus. & Prof. Code §§ 17500, *et seq*.

E.    ARL is Pursuant to UCL, FAL and CLR

While Defendant is correct that "[t]here is no private cause of action under the ARL," a consumer "who has been harmed by a violation of [ARL] may bring a claim pursuant to other consumer protection statutes, including [] FAL, [UCL], and [CLR]." Def. Mem. at 24 citing *Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 677 (9th Cir. 2018); *Arnold v. Hearst Mag. Media, Inc.*, No. 19-cv-1969, 2020 WL 3469367, at *7 (S.D. Cal. June 25, 2020).

For instance, Plaintiffs alleged that "Defendants violated the FAL by failing to comply with the requirements of the Automatic Renewal Law." *Arnold*, 2020 WL 3469367, at *7. Specifically, "Defendant[] failed to disclose the terms of their automatic renewal offers in a 'clear and conspicuous manner' and charged Plaintiffs' credit cards without obtaining Plaintiffs' consent to the automatic renewal offer terms." *Arnold*, 2020 WL 3469367, at *7 citing Cal. Bus. & Prof. Code § 17602(a)(1); Am. Compl. ¶¶ 86, 89.

Further, Plaintiffs did not "receive[] the subscriptions they paid for," which was a limited trial, and "that they paid more than they otherwise would have" if they knew the truth, is sufficient to show they "suffered injury in fact and … lost money property as a result" of the UCL and FAL violations. Def. Mem. at 23 citing *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326-27 (2011) citing Cal. Bus. Prof. Code §§ 17204, 17535.

9

## II. PRICE PREMIUM SUPPORT ARTICLE III STANDING

Defendant's challenge to Plaintiffs' Article III standing fails because the allegations of paying a price premium is sufficient to show an "injury-in-fact." Def. Mem. at 11 citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 99 (S.D.N.Y. 2022).

### A. Labarr's Allegations of Price Premium is Sufficiently Pled

Conforming with *Spokeo*, Labarr established a "concrete harm" by alleging that she "subscribed to the Service," paid "a premium price," and "would not have subscribed to the Service or would have paid less if [she] knew [she] would not be able to unsubscribe, cancel [her] subscriptions, and not be charged further." *Spokeo*, 578 U.S. at 343. Thus, her allegation, that "the price of the [Service] was inflated as a result of [D]efendant's deception" "is a quintessential injury-in-fact." *In re Chrysler-Dodge-Jeep Ecodiesel Marketing*, 295 F. Supp. 3d 927, 946 (N.D. Cal. 2018) and *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 481 (S.D.N.Y. 2014).

At this early stage of the case, New York and California courts have consistently held that a plaintiff's averment that she "would not have purchased" something "had [s]he known the representations and omissions were false and misleading" "suffice[s] to allege a price premium theory of injury." *Hawkins v. Coca-Cola Co.*, No. 21-cv-8788, 2023 WL 1821944, at *4 (S.D.N.Y. Feb. 7, 2023); *Fishon*, 2020 WL 6564755, at *10-11; *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 351 (S.D.N.Y. 2020); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1088 (C.D. Cal. 2015); *In re Tobacco Cases II*, 192 Cal. Rptr. 3d 881, 898 (2015).

While Defendant's position that Labarr's "conclusory allegations are insufficient to meet [] [her] burden of alleging an injury in fact," it bases its argument on the You Declaration. Def.

Mem. at 13 citing *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-cv-2440, 2017 WL 3995619, at *5 (S.D.N.Y. Sept. 11, 2017) and You Decl. ¶¶ 9, 11, 12.

Though on a "motion to dismiss, courts may be able to consider documents that are not incorporated by reference or attached to a complaint," this only applies where "there are 'no material disputed issues of fact regarding the relevance of the document.'" *Duran*, 450 F. Supp. 3d at 351; *Khoja v. Orexigen Thers. Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

Labarr alleged she "signed up to receive digital access to The Epoch Times because it was only $1 for two months or $99 for twelve months" and was "injured through the monies paid to Defendant." Am. Compl. ¶¶ 70-71. Therefore, Labarr's allegations are in direct contradiction to Yu's declaration, which "presents a fact question that should not [] [be] decided upon a motion to dismiss." *Zurakov v. Register.Com, Inc.*, 760 N.Y.S.2d 13, 16 (2003).

### B.    Rutledge Allegations are Based on Price Premium Theory

While Defendant contends that Rutledge "cannot show causation" because he does not establish he "relied on the claimed misrepresentations," "Plaintiff need not [] plead that he reasonably relied on the misrepresentations; he need only plead an objective misrepresentation that caused the injury at issue." Def. Mem. at 13-14 citing *Spokeo*, 578 U.S. at 339; *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 521 (S.D.N.Y. 2015).

Rutledge alleged "Defendant made misrepresentations that would have mislead a reasonable consumer" through its offering of an "introductory subscription" for "two months for $1 or twelve months for $99." *Fishon*, 620 F. Supp. 3d at 102; Am. Compl. ¶ 16. Rutledge also alleged "that as a result of those widespread misrepresentations that mislead reasonable consumers, they paid higher costs." *Fishon*, 620 F. Supp. 3d at 102; Am. Compl. ¶¶ 55-57, 74, 98.

Further, Rutledge's injury is based on paying a "price premium," not that his "injury is the result of deceptive misrepresentations or omissions," and thus, does not require a

11

"demonstrate[ion] [of] causation for purposes of Article III standing." *Williams*, 449 F. Supp. 3d at 904; Am. Compl. ¶ 74.

Whether Rutledge had "knowledge of the misrepresentation in advance of purchase" even though he alleges he "signed up to receive digital access to [its Service] because it was only $1 for two months or $99 for twelve months" is "a question of fact" that should not be "resolved [][] as a matter of law." *Carrier Corp. v. Allstate Ins. Co.*, 133 N.Y.S.3d 697, 701 (2020).

### III.   UNJUST ENRICHMENT CLAIM IS PERMITTED

Defendant argues Plaintiffs unjust enrichment claim fails for several reasons, all of which are incorrect. Def. Mem. at 25-27. First, although Defendant proffers Plaintiffs' claim must fail because it "duplicates" their "tort claim," Fed. R. Civ. P. 8(d)(2) permits them to "set out 2 or more statements of a claim or defense alternatively or hypothetically." Def. Mem. at 26 citing *Brady v. Anker Innovations Ltd.*, No. 18-cv-11396, 2020 WL 158760, at *12 (S.D.N.Y. Jan. 13, 2020).

Second, while Defendant argues the claims also fail because under California law "there is no standalone claim for unjust enrichment," the converse is equally true. Def. Mem. at 26 citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

Third, Plaintiffs "sufficiently allege facts supporting each of the elements of their unjust enrichment claim." Def. Mem. at 25 citing *In re Michel*, 573 B.R. 46, 64-65 (Bankr. E.D.N.Y. 2017). Plaintiffs alleged they "conferred a benefit upon [D]efendant," by paying a price premium, and "that [it] obtain[ed] such benefit without adequately compensating [P]laintiff[s]," since it represented that the subscription was a "trial that would end at the conclusion of the introductory period," which was false. *Nakamura v. Fujii*, 677 N.Y.S.2d 113, 116 (1998); Am. Compl. ¶¶ 41, 98, 103.

Fourth, contrary to Defendant's contention, "Plaintiff[s] [are not] alleging damages based upon a breach of an express warranty[,] which [would] cover[] the same subject matter" as unjust

12

enrichment, and, as a result, doom their claim. Def. Mem. at 26 citing *Smith v. Allmax Nutrition, Inc.*, No. 15-cv-00744, 2015 WL 9434768, at \*10 (E.D. Cal. Dec. 24, 2015).

Finally, Plaintiffs purported "failure to identify which state law (California or New York) governs [their unjust enrichment claim [does not] mean[] the claim has not been adequately pled." Def. Mem. at 25 citing *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, No. 16-cv-06391, 2018 WL 1576457, at \*4 (N.D. Cal. Mar. 30, 2018).

Under California and New York law, restitution is the "appropriate remedy for unjust enrichment," which Plaintiffs seek to obtain. *Caro Cap., LLC v. Koch*, No. 20-cv-6153, 2023 WL 1103668, at \*17 (S.D.N.Y. Jan. 30, 2023); *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014) (reasoning that unjust enrichment is "is synonymous with restitution"); Am. Compl. ¶ 103.

Further, Rule 8(a) "does not require [P]laintiffs to plead the legal theory, facts or elements underlying their claim," and their unjust enrichment claim provided "more than sufficient notice to permit [D]efendant to file an answer." *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 323 (S.D.N.Y. 2003).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion or in the alternative grant leave to file a Second Amended Complaint.

Dated:        August 23, 2023

                                    Respectfully submitted,

                                    Sheehan & Associates, P.C.
                                    /s/Katherine Lalor
                                    60 Cuttermill Rd Ste 412
                                    Great Neck NY 11021
                                    Tel: (516) 268-7080
                                    klalor@spencersheehan.com

13

Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

14

**Certificate of Service**

I certify that on August 23, 2023, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☒ | ☐ |
| Plaintiff's Counsel | ☐ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☒ | ☐ | ☐ | ☐ |

/s/ Katherine Lalor